## BAILEY v. STATE OF ALABAMA.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 538.  Submitted November 12, 1908.—Decided December 21, 1908.

This court cannot require the state court to release persons held for trial because the evidence fails to show probable cause, and in this case the judgment of the highest court of the State dismissing a writ of *habeas corpus* is affirmed without consideration of the questions on the merit and the constitutionality of the state statutes under which the accused was held although such questions were discussed by the state court.

*Quære* and not decided, whether the statutes of Alabama involved in this case establish a system of peonage in violation of the Constitution and laws of the United States.

THE facts are stated in the opinion.

*Mr. Fred S. Ball* and *Mr. Edw. S. Watts,* for plaintiff in error.

*Mr. Alexander M. Garber,* Attorney General of the State of Alabama, and *Mr. Thomas W. Martin,* for defendant in error.

By leave of court, *Mr. Attorney General Bonaparte* and *Mr. Robert A. Howard* filed a brief as *amici curiæ* on the question of constitutionality of the Alabama statute.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a writ of error to reverse a judgment of the Supreme

Court of the State of Alabama, affirming a judgment of a judge of the Montgomery City Court, which denied a discharge on *habeas corpus* to the plaintiff in error. At the hearing on the writ in the City Court it appeared that after a preliminary trial before a justice of the peace the plaintiff in error was committed for detention on a charge of obtaining fifteen dollars under a contract in writing, with intent to injure or defraud his employer. At this stage the writ was issued.

If the Supreme Court had affirmed the denial of the discharge on the ground that the proper course was to raise the objections relied upon at the trial of the principal case on the merits and to take the question up by writ of error, it would have adopted the rule that prevails in this court and there would be nothing to be said. But the Supreme Court of the State dealt with the objections, and, as the matter is one of local procedure, it is not to be criticised for taking a different course. The unsatisfactoriness of such attempts to take a short cut will appear, however, we think, in a moment.

We gather from the opinion of the Supreme Court that the plaintiff in error is proceeded against under a law of 1907 (General Acts, 1907, p. 636), amending the Code of 1896, § 4730. This section of the Code made it an offense punishable like larceny to enter into a contract in writing for service with intent to injure or defraud the employer, and, after thereby obtaining money or personal property from such employer, with such intent, without just cause and without refunding the money or paying for the property to refuse to perform the service. The amendment, embodying and enlarging an earlier one, makes the refusal or failure without just cause *prima facie* evidence of the intent; makes the penalty a fine in double the damage suffered, one-half to go to the party injured, and creates a similar offense with regard to persons making contracts in writing "for the rent of land." It is contended that the statute as it now stands is unconstitutional under the Thirteenth and Fourteenth Amendments. The presumption is said to be artificial and not drawn from the facts of life.

When coupled with the local rule that the party cannot testify to his actual intent, it is said practically to make a crime out of a mere departure from service, which it is said, and it seems to have been conceded by the Supreme Court of Alabama, could not be done.

The trouble in dealing with this contention is due to the meager facts on which this case comes before us at this stage. If the principal case had been tried it is imaginable that it might appear that a certain class in the community was mainly affected, and that the usual course of events, including the consequences in case of inability to pay the fines, was such that in view of its operation and intent the whole statute ought to be held void. It may be, although presumptions of intent from somewhat remote subsequent conduct are not unknown to the common law, *Commonwealth* v. *Rubin*, 165 Massachusetts, 453, that the amendment creates a presumption that cannot be upheld. But we cannot deal with these questions now. All that appears from the record with regard to the foundation of the case against him is that the plaintiff in error is held on a charge of having obtained money under a written contract with intent to defraud. There is no doubt that such conduct may be made a crime. It may be questioned whether we ought to assume that the proceeding is under the statute, although it is admitted on all hands. But if we do assume it, there is nothing as yet to show that the section of the Code apart from the amendments is bad. The amendments are separable, as is sufficiently shown by the fact that the rest of the enactment originally stood without them. When the case comes to trial it may be that the prosecution will not rely upon the statutory presumption but will exhibit satisfactory proof of a fraudulent scheme, so that the validity of the addition to the statute will not come into question at all. It is true that it appears that the plaintiff in error was held for trial on the statutory evidence and with no other proof of fraudulent intent. But if that evidence was insufficient it hardly will be contended that this court should require the state courts to

release all persons held for trial, where in its opinion the evidence fails to show probable cause. We repeat, the trouble with the whole case is that it is brought here prematurely by an attempt to take a short cut. And as the Supreme Court of the State would have been warranted in denying the writ on that ground, perhaps we have done a work of supererogation in giving further reasons for affirming its judgment.

*Judgment affirmed.*

MR. JUSTICE HARLAN, dissenting.

The plaintiff in error, Bailey, was arrested and held for trial on the charge of having obtained from his employer with the intent to injure him the sum of fifteen dollars. Having been taken into custody he sued out a writ of *habeas corpus* from a subordinate court of Alabama, alleging that the statute under which he was arrested and deprived of his liberty was in violation of the Constitution of the United States.

The statute of Alabama referred to is as follows: " § 6845 of Alabama Code of 1907, p. 522, c. 211.—Any person who, with intent to injure or defraud his employer, enters into a contract in writing for the performance of any act or service, and thereby obtains money or other personal property from such employer, and with like intent, and without just cause, and without refunding such money or paying for such property, refuses or fails to perform such act or service, must, on conviction, be punished by a fine in double the damage suffered by the injured party, but not more than three hundred dollars, one-half of said fine to go to the county and one-half to the party injured; and any person who, with intent to injure or defraud his landlord, enters into any contract in writing for the rent of land and thereby obtains any money or other personal property from such landlord, and with like intent, without just cause, and without refunding such money or paying for such property, refuses or fails to cultivate such land, or to comply with his contract relative thereto, must, on conviction, be

punished by a fine in double the damage suffered by the injured party, but not more than three hundred dollars, one-half of said fine to go to the county and one-half to the party injured. And the refusal of any person who enters into such contract to perform such act or service, or to cultivate such lands, or refund such money, or pay for such property, without just cause, shall be *prima facie* evidence of the intent to injure his employer or landlord or to defraud him."

It appears that at the hearing of the application for *habeas corpus* the accused contended that the statute was in violation (1) of the Fourteenth Amendment of the Constitution of the United States in that it deprived him of his liberty without due process of law and denied him the equal protection of the laws; (2) of the Thirteenth Amendment, in that its effect was to subject him to involuntary servitude (not as a punishment for crime) if he failed to pay a debt preferred against him.

. These contentions were overruled and the discharge of the accused having been refused he prosecuted an appeal to the Supreme Court of Alabama. That court considered upon its merits every question presented by the record, and affirmed the order under which the accused was held in custody. From that order the case was brought here by Bailey from that court upon writ of error granted by its Chief Justice.

Speaking generally, the statute has been assailed by the accused, as well as by the Attorney General of the United States (who, with the consent of this court, has filed a brief as *amicus curiæ*), as establishing and maintaining and as intended to establish and maintain, as to laborers or employés in Alabama, a system of peonage in violation of the Constitution and the laws of the United States. The statute of Alabama, the Attorney General contends, is in violation of the act of Congress of March 2, 1867, c. 187, now § 1990, Rev. Stat., which provides that "all acts, laws, resolutions, orders, regulations, or usages of the Territory of New Mexico, or any other Territory or State, . . . by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or

indirectly, the voluntary or involuntary service or labor of any persons as peons in liquidation of any debt or obligation, or otherwise, are declared null and void." 14 Stat. 546.

The Supreme Court of Alabama, by its final order, overruled the objections which the accused urged, on constitutional grounds, against the statute and refused to direct his discharge from custody. If that statute is repugnant to the Constitution and laws of the United States it is void, and the accused is deprived of his liberty in violation of Federal law. That every one will admit. But this court refuses, although the case is before it upon writ of error regularly sued out by the defendant, to consider and determine that question. It affirms the judgment of the state court and leaves the accused in custody upon the ground—if I correctly interpret the opinion—that he took a "short cut" when seeking, upon *habeas corpus,* to be discharged from custody in advance of his trial. If the accused, in advance of his trial, had sought a discharge on a writ of *habeas corpus* sued out from *a Circuit Court of the United States,* that might have been deemed a "short cut." For it is well established that "in the light of the relations existing under our system of government between the judicial tribunals of the Union and the State, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution," the courts of the United States will not, except in certain cases of urgency, and in advance of his trial, discharge upon *habeas corpus* one who is alleged to be held in custody by the State in violation of the Constitution or the laws of the United States. *Ex parte Royall,* 117 U. S. 241, 248, 249; *Minnesota* v. *Brundage,* 180 U. S. 499, 501, *and the authorities there cited.* But whether the accused, in seeking his discharge by the state court, adopted a mode of procedure authorized by the local law was for the Alabama courts, not for this court, to determine. The state court recognized the proceeding by *habeas corpus* to be in accordance with the local law; for, the Supreme Court of Ala-

bama, without even intimating that the accused took a "short cut," or pursued the wrong method to obtain his discharge, entertained his appeal and passed upon the constitutionality of the statute under which he was held in custody. As the state court by its final order held that the detention of the accused by the state authorities was not inconsistent with any privilege secured by the Constitution or laws of the United States, he was entitled, *of right*, to bring the case here upon writ of error and have this court determine the question, distinctly raised, whether the statute of Alabama, as applied to his case, did not infringe privileges belonging to him under the Constitution and laws of the United States. We say, of right, because § 709, Rev. Stat., expressly authorizes a writ of error to reëxamine the final judgment of the highest court of a State, which denies a title, right, privilege or immunity, specially set up or claimed under the United States. This is a right of great value. I submit that this court cannot properly refuse or fail to meet the constitutional question decided by the state court and plainly raised by the present writ of error for its consideration. Such refusal or failure cannot, I submit, be justified except on the ground that an order of the highest court of a State rendered on a formal appeal which affirms that the accused is not held in custody in violation of the Constitution and laws of the United States, is not a *final judgment* within the meaning of § 709—a proposition which this court does not announce and which, I cannot believe, it will ever announce. The course pursued in the disposition of this case by the court has not, so far as I am aware, any precedent in its history. If it was the right and duty of the state court to determine by its final order whether the accused was constitutionally deprived of his liberty or was subjected to involuntary servitude or labor, not in punishment for crime, but really in liquidation of a debt, it is then the right, and, I think, the duty of this court, upon the present writ of error, regularly brought by the accused, to reëxamine that judgment and decide the question whether he is deprived of his liberty

in violation of the Constitution or laws of the United States. It is a curious condition of things if this court must remain silent when the question comes before it regularly, whether the final judgment of the highest court of a State does not deprive the citizen of rights secured to him by the Supreme Law of the Land.

For the reasons stated I dissent from the opinion and judgment of the court.

MR. JUSTICE DAY also dissented.