[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 988 
The defendant, Herbert Anderson, a member of the negro race, was indicted on May 8, 1944, in the Parish of Allen for the murder of W. H. Bishop, a member of the *Page 989 
white race and chief of police of the city of Oakdale, Louisiana. The case was fixed for trial for May 22, 1944. Upon trial, the defendant was found guilty as charged by a jury and sentenced to be electrocuted. The defendant has appealed.
During the course of the trial and prior to sentence, five bills of exception were taken by the defendant to the rulings of the trial court.
The defendant had previously been indicted, tried, convicted and sentenced to be electrocuted for this offense. On appeal, this Court reversed the conviction and sentence for the reason that the defendant had been denied the equal protection of the laws in contravention of the federal Constitution. See, State v. Anderson, 205 La. 710, 18 So.2d 33. We found on that appeal that between 10% and 20% of the population of Allen Parish consisted of colored people and that considerably less of that percentage could qualify for jury service. We also found that lists from which the jury and grand jury were selected contained no names of members of the colored race. Therefore, we set aside the conviction and sentence.
Subsequent to the decision of this Court, with the view of complying with our holding, the trial court ordered the jury commission of Allen Parish to purge the general venire box and refill it with three hundred names, not less than 15% to be members of the colored race.
The jury commission was ordered to select twenty names from the general venire box, when refilled, to constitute the *Page 990 
grand jury and to select fifty names to serve as petit jurors. In compliance with the orders of the court, the jury commission purged the venire box, and it selected twenty names of persons to constitute the grand jury panel and fifty names of persons to serve as jurors.
Three of the twenty persons listed to serve as grand jurors were members of the colored race, viz, Roy Caesaire, Manuel Smith and Clem Walden.
Two of these members of the colored race were actually called to serve as grand jurors, namely, Roy Caesaire and Manuel Smith.
Roy Caesaire was selected and served on the grand jury which indicted the defendant. Manuel Smith claimed that he could neither read nor write the English language and was excused by the court.
Twenty of the fifty names chosen by the jury commission for the petit jury panel to serve during the week that the defendant was tried were those of persons of the colored race.
During the selection of the jury to try the defendant, six members of the colored race were actually drawn and examined on their voir dire. One of this number was excused for the reason that he was unable to hear. Four of this number disqualified because they did not believe in capital punishment. The other juror qualified in every respect but was challenged peremptorily by the State. When the jury was finally completed, it contained no member of the colored race. *Page 991 
Bill of exception No. 1 was taken to the overruling of the defendant's motion to quash the indictment.
The motion to quash the indictment is predicated on the ground that the defendant was discriminated against in the selection of the grand jury. He takes the position that prior to his trial members of the negro race had been consistently excluded from grand jury and petit jury service in Allen Parish and the jury commission has continued this practice by listing the names of members of the negro race not qualified to serve.
The record shows that Roy Caesaire, the member of the colored race who served on the grand jury, attended school approximately five years. He was examined on the trial of the motion to quash. From the notes of testimony, it appears that he has a fair understanding of the English language. He was able to add accurately three columns of figures. His writing is legible, although sketchy, and his spelling is poor.
Manuel Smith, who disqualified, testified that he could neither read nor write the English language. A jury commissioner testified that he gave the name of Manuel Smith to be placed on the list for the reason that he had been reliably informed after diligent inquiry that Manuel Smith could read and write and had the qualifications to serve as a juror. He is supported in this testimony by another witness.
Clem Walden, the third member of the colored race on the grand jury list, was not drawn in selecting the grand jury. However, *Page 992 
the record shows that he could read and write correctly and legibly.
Counsel for the defendant contends that Roy Caesaire is not a member of the negro race.
The record shows that he is of negro lineage. He is known as a negro and claims to be a negro.
From our appreciation of the testimony of the clerk of the trial court and the members of the jury commission, forty-five members of the colored race were listed in the panel of three hundred names after diligent inquiry. These witnesses testified to the effect that they were reliably informed that the forty-five persons were qualified to serve as jurors. Their testimony is uncontradicted. We find nothing on the face of the record nor is there any extrinsic evidence tending to show any purposeful intention to discriminate.
"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intention or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, of McFarland v. American Sugar Refining Co., 241 U.S. 79, 86, 87, 36 S.Ct. 498, 60 L.Ed. 899, 904, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, Yick Wo v. Hopkins, 118 U.S. 356, 373, 374, 6 S.Ct. 1064, *Page 993 
30 L.Ed. 220, 227, 228. But a discriminatory purpose is not presumed, Tarrance v. State of Florida, 188 U.S. 519, 520, 23 S.Ct. 402, 47 L.Ed. 572, 573, there must be a showing of `clear and intentional discrimination,' Gundling v. City of Chicago,177 U.S. 183, 186, 20 S.Ct. 633, 44 L.Ed. 725, 728; see Ah Sin v. Wittman, 198 U.S. 500, 507, 508, 25 S.Ct. 756, 49 L.Ed. 1142, 1145, 1146; Bailey v. State of Alabama, 219 U.S. 219, 231, 31 S.Ct. 145, 55 L.Ed. 191, 197. Thus the denial of equal protection by the exclusion of negroes from a jury may be shown by extrinsic evidence of a purposeful discriminatory administration of a statute fair on its face. Neal v. State of Delaware, 103 U.S. 370, 394, 397, 26 L.Ed. 567, 573, 574; Norris v. State of Alabama, 294 U.S. 587, 589, 55 S.Ct. 579, 79 L.Ed. 1074, 1076; Pierre v. State of Louisiana, 306 U.S. 354, 357, 59 S.Ct. 536, 83 L.Ed. 757, 759; Smith v. State of Texas,311 U.S. 128, 130, 131, 61 S.Ct. 164, 85 L.Ed. 84, 86, 87; Hill v. State of Texas, 316 U.S. 400, 404, 62 S.Ct. 1159, 86 L.Ed. 1559, 1562. But a mere showing that negroes were not included in a particular jury is not enough; there must be a showing of actual discrimination because of race. State of Virginia v. Rives,100 U.S. 313, 322, 323, 25 L.Ed. 667, 670, 671; Martin v. State of Texas, 200 U.S. 316, 320, 321, 26 S.Ct. 338, 50 L.Ed. 497-499; Thomas v. State of Texas, 212 U.S. 278, 282, 29 S.Ct. 393, 53 L.Ed. 512, 514; cf. Williams v. State of Mississippi,170 U.S. 213, 225, 18 S.Ct. 583, 42 L.Ed. 1012, 1016." Snowden v. Hughes,321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. *Page 994 
The defendant's bill of exception No. 2 is predicated on the overruling of the defendant's objection to going to trial before a jury which included no member of his race.
Counsel for the defendant contends that the listing of four names of persons of the colored race who entertained conscientious scruples against the infliction of capital punishment and the listing of the name of a deaf colored person denied the defendant the equal protection of the laws. He takes the position that the jury commission continued to exclude members of the negro race by listing the names of persons not qualified to serve.
The record shows that two members of the white race were also excused because they were opposed to capital punishment. From the many cases we have reviewed, it appears that quite a number of citizens of this State, irrespective of race, entertain conscientious scruples against the infliction of capital punishment. In fact, the record in this case discloses this to be true.
When the three hundred names are placed in the general venire box by the jury commissioners, the trial of all jury cases is contemplated. Jurors are not selected with the view of trying any particular or special case. Many persons opposed to capital punishment are competent to serve in other cases. We fail to find anything in the record indicating any intention on the part of the jury commission to list incompetent jurors.
The mere fact that no members of the colored race were included on the petit *Page 995 
jury, in the absence of some showing of actual discrimination because of race, is not sufficient to set the verdict aside. See Snowden v. Hughes, supra, and the authorities cited therein.
The defendant contends that the percentage of colored persons listed for jury service, namely 15%, was inadequate. He takes the position that members of the colored race constituted 25% of the population of Allen Parish.
We found in the case of State v. Anderson, supra, that the population of this race in Allen Parish ranged between 10% and 20% and that considerably less than that percentage could qualify for jury service. The only evidence offered in this case touching this question was the testimony of the Superintendent of Education. His testimony is practically the same as that given in the case of State v. Anderson, supra. We carefully reviewed that testimony as well as other evidence as to the percentage of the colored race in Allen Parish in the aforementioned case and arrived at the conclusion that the percentage was between 10% and 20%.
Bill of exception No. 3 was taken to the court's refusal to admit the following testimony of a witness:
"On the day Bishop was killed, Eddie Borden who lives at the same place as the defendant, Anderson, had been visited by Bishop and questioned as to the theft of the war bonds and stamps, which has been testified to. That when Eddie Borden denied any knowledge of the stamps or any *Page 996 
knowledge as to where they were, Bishop struck her in the head with a pistol and came very near killing her. * * *"
The defendant sought to introduce this testimony to show that he had knowledge of an altercation between Bishop, the deceased, and a third party and for the purpose of corroborating his testimony as to alleged threats made against him by the deceased.
The defendant was not present at the time of the altercation. He pleaded self defense but failed to establish any hostile demonstration or prove any overt act on the part of the person slain. Under such circumstances, the trial court properly excluded the testimony.
Article 482 of the Code of Criminal Procedure provides:
"In the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
"From the Ford Case, [State v. Ford] 37 La.Ann. [443] 460, down to the present time, it has been uniformly held by this court that, in passing upon the question of prior threats of the deceased, the trial judge must of necessity be clothed with the authority to decide whether a proper foundation has been laid for the proffered evidence; that such authority necessarily includes the discretion to ignore and not consider testimony which his reason refuses to believe; and that mere evidence of such hostile demonstration, as distinguished *Page 997 
from proof thereof, is insufficient. State v. Sandiford,149 La. 933, 90 So. 261, and authorities there cited.
"It is also well settled that: `The term "overt act," as used in connection with prosecutions for murder where the plea of self-defense is involved, means any act of the deceased which manifests to the mind of a reasonable person a present intention on his part to kill defendant or do him great bodily harm.' State v. Brown, 172 La. [121], 129 (7), 133 So. 383, 386; State v. Williams, 46 La.Ann. 709, 15 So. 82; State v. Stewart, 47 La.Ann. 410, 16 So. 945; State v. Fontenot, 50 La.Ann. 537, 23 So. 634, 69 Am.St.Rep. 455." State v. Jones, 175 La. 1066,145 So. 9.
"We find no error in the ruling of the trial judge in excluding evidence of threats against the accused, in the absence of proof of hostile demonstration or of overt act on the part of deceased, at the time of the killing. Such is the settled jurisprudence of this court. * * *
"Proof of overt act or hostile demonstration, upon the part of the deceased at the time of the killing, must be made to the satisfaction of the trial judge before defendant may introduce evidence of prior threats by deceased, subject to appellate review." State v. Carter, 197 La. 155, 1 So.2d 62, 63, and cases therein cited. Also see: State v. Richard, 203 La. 722,14 So.2d 615.
Bill of exception No. 4 was taken to the refusal of the trial court to instruct the jury that it was not a law enforcing body. *Page 998 
The district attorney stated in his argument to the jury that he was in charge of enforcement of law in the district as were all the other officers of the court.
The trial court in its per curiam states that the district attorney indicated in his argument that the jury was also charged with the enforcement of the law. The trial court further stated in its per curiam that the jury was instructed that it was to consider only the argument of counsel which had to do with the facts of the case and the law as the district attorney saw it, but that it would be instructed at the proper time as to the law in the case and as to its duties.
It is provided in Article 381 of the Code of Criminal Procedure:
"Counsel may argue to the jury both the law and the evidence of the case, but must confine themselves to matters as to which evidence has been received, or of which judicial cognizance is taken, and to the law applicable to the evidence; and counsel shall refrain from any appeal to prejudice."
"It is only in very extreme cases that the interference of the court will not be considered sufficient to remove the prejudicial effect of an improper statement; such as an appeal to race prejudice (State v. Bessa, 115 La. 259, 38 So. 985), or a comment on the failure of the accused to testify in his own behalf (State v. Robinson, 112 La. 939, 36 So. 811). The remarks of the district attorney in the instant case were not of this character and we are not convinced that the jury disregarded the instructions *Page 999 
of the court and permitted such remarks to influence their verdict." State v. Easley, 118 La. 690, 43 So. 279, 281. Also see: State v. Heidelberg, 120 La. 300, 45 So. 256; State v. Horton, 151 La. 683, 92 So. 298; State v. Graziani, 168 La. 297,121 So. 872; State v. Jones, 169 La. 291, 125 So. 127; State v. Smith, 196 La. 652, 199 So. 791.
Moreover, it is the duty of a jury to enforce the law. Enforcement of the law does not necessarily mean to convict an accused. Under our law, it is the duty of the jury to acquit an accused if his guilt is not established beyond a reasonable doubt. An acquittal in such case would be an enforcement of the law.
Bill of Exception No. 5 was taken to the following argument advanced by the district attorney to the jury:
"The defendant on the stand admitted that he had been convicted and had served time in California for some offense and that the Jury should consider that in determining the credibility of his evidence."
Article 495 of the Code of Criminal Procedure provides as follows:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness. But before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; provided, always, that a witness, *Page 1000 
whether he be the defendant or not, may be compelled to answer on cross-examination whether or not he has ever been indicated or arrested and how many times."
"The district judge properly allowed the district attorney to question the defendant on cross-examination with respect to prior indictments or arrests, for, once the accused had taken the witness stand in his own behalf, his credibility as a witness was open to attack the same as any other witness and he thereby subjected himself under cross-examination to reveal his entire record. The authorities on this point are legion in our jurisprudence." State v. Guillory, 201 La. 52, 9 So.2d 450, 452, and authorities therein cited. Also see: State v. Hoover,203 La. 181, 13 So.2d 784.
For the reasons assigned, the conviction and sentence are affirmed.
O'NIELL, C. J., concurs in the decree, affirming the verdict and sentence, but not in the interpretation which the court has given to article 482 of the Code of Criminal Procedure, in the ruling on bill of exception No. 3.