98 So.2d 210 (1957)
233 La. 844
CITY OF NEW ORLEANS
v.
Dan LEVY et al.
No. 42418.
Supreme Court of Louisiana.
June 10, 1957.
On Rehearing November 12, 1957.
*211 Rittenberg, Weinstein & Bronfin, Robert Weinstein, Fred Bronfin, Henry F. Yoder, Joyce A. Went, New Orleans, John A. Shanks, for defendants-appellants.
Alvin J. Liska, City Atty., Joseph H. Hurndon, Asst. City Atty., Jacob H. Morrison, Special Counsel, Henry B. Curtis, Fred J. Cassibry, New Orleans, of counsel, for City of New Orleans.
Steeg, Shushan & Pradel, New Orleans, for amicus curiae.
HAMITER, Justice.
In this injunction proceeding the City of New Orleans seeks to compel the removal of a permanent plastic covering or roof now existing over the court yard that separates two buildings located at No. 600 Bourbon Street in the Vieux Carre section of the named municipality (the buildings have definite architectural value, they being a *212 splendid example of an old fashioned French cottage with accompanying slave quarters). The defendants are Mrs. Julia Rommel Moore, the owner of the premises, and Dan Levy, her lessee who installed the covering and operates a restaurant beneath it.
For a cause of action plaintiff alleged that the mentioned roof is violative of: (1) the Vieux Carre ordinances (No. 14538 CCS and amendments thereto) in that the material used therefor (sheets of plexiglass) does not conform with the "quaint and distinctive character of the Vieux Carre architecture" and (2) the general municipal zoning ordinances (Nos. 11302 and 18565 CCS) in that the permanent installation covers the entire court yard, thereby failing to allow the required 20% open yard space.
The district court issued the mandatory injunction sought and ordered the removal of the plastic roof. If not set aside the judgment, according to plaintiff's counsel, "may very well result in the termination of the restaurant business in the covered patio or court yard * * *." The defendants are appealing.
Prior to the filing of this suit plaintiff prosecuted defendant Levy criminally in the New Orleans Municipal Court on a charge that he installed the plastic covering, in violation of the Vieux Carre ordinances, without first having obtained a permit from the Vieux Carre Commission. Holding that the defendant was technically guilty of the charge the trial judge imposed a fine of only $10 and observed: "* * * I do not believe the Quarter is hurt by this, in fact I think that Mr. Levy has greatly improved the looks of the particular patio by putting this plexiglass there * * *. The Court finds him guilty of not having a permit and, as the Court stated before, he believes that the Quarter benefited by this type of covering * * *." (In the instant cause the former director of and architect for the Vieux Carre Commission testified that although the covering is non-conforming, being a modern plastic material, it looks very nice.) On an appeal of the criminal prosecution to this court, presenting for our consideration only constitutional issues respecting the ordinances, the conviction and sentence were affirmed. See City of New Orleans v. Levy, 223 La. 14, 64 So.2d 798.
Accepting our decision in that case that the Vieux Carre ordinances are constitutional, and apparently conceding that the controversial plastic roof does not conform with the requirements of the invoked municipal laws, the defendants in the instant injunction suit contend only that "* * * the actions of the City and the Commission in administering the laws in question were unreasonable, capricious, arbitrary and discriminatory; and, therefore, in violation of the Equal Protection clause of the United States Constitution."
And in support of such contention defendants rely on City of Shreveport v. Dickason, 160 La. 563, 107 So. 427 and Simmons v. City of Shreveport, 221 La. 902, 60 So.2d 867 wherein this court approved the principle set out by the United States Supreme Court in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, that: "* * * Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. * * *"
The city does not dispute the correctness of this doctrine. It maintains only that defendants have not shown unjust discrimination against them in the administering of the municipal laws in question.
With respect to the Vieux Carre ordinances the record conclusively discloses that in recent years there have been innumerable non-conforming alterations of buildings throughout the French Quarter *213 against which the city has sought no injunctive relief; some, in fact, were authorized by officially granted permits. The existence of this widespread condition was freely admitted during the trial by two former members of the Vieux Carre Commission who are architects by profession.
Among such violations noted are specifically the following: Maison Blanche Company was permitted by councilmanic action to demolish buildings located on Bienville Street (of quaint and distinctive character of the Vieux Carre architecture) and to erect in their place a modern, multi-storied brick structure. At 227 Dauphine Street there exists an ultramodern dental building one that undeniably is not in keeping with the antique architecture of that area. The operator of the LaLune Cocktail Lounge at 800 Bourbon Street was granted permission to entirely and permanently enclose a court yard similar to the one involved here, the enclosure (including the roof) having been made with glass and steel and being plainly visible from the street. In the court yard of the Napoleon House, located at St. Louis and Chartres Streets, certain nonconforming alterations were made and still exist. True, in a criminal prosecution the operator of that establishment was convicted and fined (see City of New Orleans v. Impastato, 198 La. 206, 3 So.2d 559). But no injunction suit has ever been brought to compel conformity. As to this omission counsel for plaintiff merely say: "The city is now criticized for not having ridden herd on the man * * *."
Additionally, it is shown (and conceded by the city) that there are countless violations of the sign provisions of the Vieux Carre ordinances and that for approximately three years no effort has been made to enforce the regulations. In fact, it appears that in the near future the Commission plans to propose new and less stringent regulations concerning the use of signs in the French Quarter, the result of which will be to render legal many of the present violations.
Too, we note that modern metal awnings attached to the exterior of buildings, and which overhang sidewalks, are permitted throughout the French Quarter. An assistant city attorney testified that in his opinion awnings are not regulated by the ordinances inasmuch as no specific mention is therein made of them. Assuming this to be true it cannot be denied that modern metal awnings are out of harmony with Vieux Carre architecture.
Unquestionably, the plexiglass roof involved here is also violative of the general municipal zoning ordinances in that it prevents the maintenance of the required 20% open yard space. But the record discloses that in the French Quarter there exist similar violations (many other court yards are covered in their entirety) against which no injunctions have been sought. This is particularly true of the following: LaLune Cocktail Lounge, 800 Bourbon Street, Napoleon House, 500-504 Chartres Street, Desportes Drug Store, 838 Chartres Street (Chartres and Dumaine Streets), Manheim's, 409 Royal Street (Conti and Royal Streets), and the Grimaldi property, 700 St. Ann Street.
As to the other violations (of both the Vieux Carre and the zoning ordinances) the city takes the position that the defendants have failed to show that the alterations occurred subsequent to the enactment of the ordinances. It appears that the defendants made out a prima facie case of discrimination when they proved conclusively the existence of many unrestrained violations. Thereupon, the burden of going forward with the evidence, to explain its apparently discriminatory conduct, shifted to the city. As stated in 31 C.J.S. verbo Evidence § 110, "The burden of evidence, defined in § 103, supra, sometimes termed the burden of producing, or going forward with, the evidence, or the burden of procedure, shifts, or may shift, from side to side during the progress of the trial. Its position at any particular time is controlled by the logical necessities of *214 making proof which a party is under at the time, the burden being always on that party against whom the decision of the tribunal would be given if no further evidence were introduced. * * * This burden of evidence is so continued until the party having the burden of proof establishes a prima facie case; nothing less will shift the burden of evidence. When such a prima facie case is established, the burden of evidence is shifted to the adverse party; the adverse party may, by the production of evidence destroying the prima facie case against him, satisfy the burden and restore it to the original party." See also First National Bank of Ruston v. Jones, 186 La. 269, 172 So. 155.
With further reference to the violation of the zoning ordinances by these defendants we notice that one of plaintiff's witnesses, who is connected with the New Orleans Department of Regulatory Inspection (the agency charged with the supervision of zoning compliance), testified that this is the first instance to his knowledge of the city's having commenced court action for an injunction without previously notifying the alleged offender; that customarily the owner is given notice of the violation and is granted a delay in which he can either comply or negotiate with the Zoning Board of Appeal and Adjustment for a variation. These defendants received no notice from the Department of Regulatory Inspection regarding the zoning violation until after the instant suit was instituted and just a day or two prior to its actual trial.
In view of the aforementioned facts and circumstances we are forced to conclude that the present action constitutes an unfair, unjust and illegal discrimination as to these defendants and that the injunctive relief sought against them should not be granted until and unless the regulatory measures under consideration are enforced in like manner as to all other persons similarly situated.
For the reasons assigned the judgment appealed from is reversed and set aside and plaintiff's suit is dismissed.
McCALEB, J., concurs in the decree, assigning written reasons.
McCALEB, Justice (concurring).
I cannot agree that the City of New Orleans and the Vieux Carre Commission are or have been applying the ordinances involved with "an evil eye and an unequal hand, so as to practically make unjust and illegal discriminations between persons in similar circumstances" (see Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 1073, 30 L.Ed. 220) and have thus denied to appellant an equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.
The sum and substance of appellant's charges is that his constitutional rights have been violated since many other similar or more severe violations of the city ordinances exist and that the city officials have permitted such violations by not taking any action to enforce the law. These complaints, even if established, would not be sufficient in my opinion to constitute an unconstitutional denial of equal protection to appellant as it is the well-settled rule of the Supreme Court of the United States and of all other State courts of last resort that the constitutional prohibition embodied in the equal protection clause applies only to discriminations which are shown to be of an intentional, purposeful or systematic nature. Snowden v. Hughes, 321 U.S. 1, 9, 64 S.Ct. 397, 88 L.Ed. 497, 503; Charleston Federal Savings & Loan Ass'n v. Alderson, 324 U.S. 182, 65 S.Ct. 624, 89 L.Ed. 857; City of Omaha v. Lewis & Smith Drug Co., 156 Neb. 650, 57 N.W.2d 269; Zorach v. Clauson, 303 N.Y. 161, 100 N.E.2d 463; 12 Am.Jur., Section 566 and State v. Anderson, 206 La. 986, 20 So.2d 288.
In State v. Anderson, this court quoted at length from the leading case of Snowden v. *215 Hughes, supra, [321 U.S. 1, 9, 64 S.Ct. 401] where the Supreme Court of the United States expressed at some length the criteria to be used in determining whether an ordinance or statute, which is claimed to have been unequally administered, transgresses constitutional rights. The Supreme Court said:
"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, of McFarland v. American Sugar Refining Co., 241 U.S. 79, 86, 87, 36 S.Ct. 498, 501, 60 L.Ed. 899 [904], or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, Yick Wo v. Hopkins, 118 U.S. 356, 373, 374, 6 S.Ct. 1064, 1072, 1073, 30 L.Ed. 220 [227, 228]. But a discriminatory purpose is not presumed, Tarrance v. State of Florida, 188 U.S. 519, 520, 23 S.Ct. 402, 403, 47 L.Ed. 572 [573]; there must be a showing of `clear and intentional discrimination,' Gundling v. City of Chicago, 177 U.S. 183, 186, 20 S.Ct. 633, 635, 44 L.Ed. 725 [728]; see Ah Sin v. Wittman, 198 U.S. 500, 507, 508, 25 S.Ct. 756, 758, 759, 49 L.Ed. 1142 [1145, 1146]; Bailey v. State of Alabama, 219 U.S. 219, 231, 31 S.Ct. 145, 147, 55 L.Ed. 191 [197]. Thus the denial of equal protection by the exclusion of negroes from a jury may be shown by extrinsic evidence of a purposeful discriminatory administration of a statute fair on its face. Neal v. State of Delaware, 103 U.S. 370, 394, 397, 26 L.Ed. 567 [573, 574]; Norris v. State of Alabama, 294 U.S. 587, 589, 55 S.Ct. 579, 580, 79 L.Ed. 1074 [1076]; Pierre v. State of Louisiana, 306 U.S. 354, 357, 59 S.Ct. 536, 538, 83 L.Ed. 757 [759]; Smith v. State of Texas, 311 U.S. 128, 130, 131, 61 S.Ct. 164, 165, 85 L.Ed. 84 [86, 87]; Hill v. State of Texas, 316 U.S. 400, 404, 62 S.Ct. 1159, 1161, 86 L.Ed. 1559 [1562]. But a mere showing that negroes were not included in a particular jury is not enough; there must be a showing of actual discrimination because of race. State of Virginia v. Rives, 100 U.S. 313, 322, 323, 25 L.Ed. 667 [670, 671]; Martin v. State of Texas, 200 U.S. 316, 320, 321, 26 S.Ct. 338, 339, 50 L. Ed. 497 [499]; Thomas v. State of Texas, 212 U.S. 278, 282, 29 S.Ct. 393, 394, 53 L.Ed. 512 [514]; cf. Williams v. State of Mississippi, 170 U.S. 213, 225, 18 S.Ct. 583, 588, 42 L.Ed. 1012 [1016].
"Another familiar example is the failure of state taxing officials to assess property for taxation on a uniform standard of valuation as required by the assessment laws. It is not enough to establish a denial of equal protection that some are assessed at a higher valuation than others. The difference must be due to a purposeful discrimination, which may be evidenced, for example, by a systematic under-valuation of the property of some taxpayers and a systematic over-valuation of the property of others, so that the practical effect of the official breach of law is the same as though the discrimination were incorporated in and proclaimed by the statute. Coulter v. Louisville & N. R. Co., 196 U.S. 599, 607, 609, 610, 25 S.Ct. 342, 343, 344, 345, 49 L.Ed. 615 [617, 618]; Chicago, B. & Q. R. Co. v. Babcock, 204 U.S. 585, 597, 27 S.Ct. 326, 328, 51 L.Ed. 636 [640]; Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 353, 38 S.Ct. 495, 62 L.Ed. 1154 [1156]; Southern R. Co. v. Watts, 260 U.S. 519, 526, 43 S.Ct. 192, 195, 67 L.Ed. 375 [387]. Such discrimination may also be shown to be purposeful,

*216 and hence a denial of equal protection, even though it is neither systematic nor long-continued. Cf. McFarland v. American Sugar Refining Co. [241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899], supra.
"The lack of any allegations in the complaint here, tending to show a purposeful discrimination between persons or classes of persons is not supplied by the approbrious epithets `willful' and `malicious' * * *."
Tested in the light of the foregoing rule, it is clear that appellant has not been denied equal protection of the law. While it is true, as pointed out in the majority opinion, that there has not been a complete consistency on the part of the City and the Vieux Carre Commission in its administration of the ordinances applicable to the Vieux Carre section, it can hardly be said that the evidence establishes that the officials have acted either arbitrarily or capriciously or that there has been any purposeful discrimination as to individuals in that section by reason of their race, color, religion, politics or that any inequality in enforcement emanated from wrongful motives. Although the two architects (formerly members of the Vieux Carre Commission, who testified for the City) readily admitted that there were many unpunished violations of the ordinances applicable to this case, they were steadfast in their assertions that the Vieux Carre Commission has, throughout the years, given a sincere and honest effort in its administration of the Vieux Carre ordinances and they further stated that numerous affidavits had been filed in the Municipal Court charging infractions of the laws by various individuals. But, according to the evidence of one of these gentlemen, the Vieux Carre Commission has experienced much difficulty in having the cases brought to trial due in part to multiple continuances granted by the court and also that considerable trouble had been encountered by the failure of attaches of the municipal court to make timely service of citation on sundry defendants. Surely this evidence, which is uncontradicted, dispels any idea of an intentional or purposeful discrimination in the enforcement of the law.
But, despite my disagreement with the majority ruling that appellant has been denied an equal protection of the law, I am nevertheless convinced that the correct result has been reached in the case, which is an equitable proceeding in which the City is seeking a mandatory injunction to have appellant ordered to remove the "plexiglass" covering erected by him over his establishment in violation of two city ordinances. Since the City is invoking an equitable remedy, all equitable principles are applicable to the case and the granting or the denial of the relief prayed for lies within the sound discretion of the Court. See 28 Am.Jur. Sec. 3, p. 198. In determining whether a court of equity should grant a mandatory injunction in a suit of this sort, the familiar maxim that "he who seeks equity must do equity" is applicable and it follows that, if the complainant is guilty of an incorrect practice or wrong conduct in the particular matter or transaction with respect to which he seeks an injunction, he will be denied relief. 28 Am. Jur. Sec. 33, pps. 66, 67. And, while it is axiomatic that a municipal corporation has the same privilege of seeking injunctions for the protection of the rights of the public as individuals have for protection of their own rights, "a municipal corporation is on the same footing as that upon which private persons and corporations may seek redress in a court of equity". McQuillan, "Municipal Corporations", Sec. 49.57, p. 292.
The evidence in the case at bar exhibits that the City has been guilty of such inconsistent conduct in the administration of its ordinances with respect to the coverings of buildings in the Vieux Carre that it cannot now expect a court of equity to grant it relief. The particular circumstance to which I refer is the fact that the Vieux Carre Commission granted to La Lune Cocktail Lounge, another establishment *217 within the near vicinity of appellant's place of business, permission to entirely and permanently enclose a courtyard, similar to the one involved here, with glass and steel directly in violation of the ordinances which are now being used as a basis for the equitable relief sought against appellant. The reason for the issuance of the permit to the La Lune Cocktail Lounge has not been explained by the City. And, while I reiterate that I do not think that the inconsistency of action in this instance operates as a denial to appellant of any constitutional right, I am convinced that it places the City in no position today to come into a court of equity for an order requiring appellant to remove the plexiglass covering, notwithstanding that he has erected it in violation of the two city ordinances pleaded herein.[1]
I concur in the decree.

On Rehearing.
SIMON, Justice.
In the application of the City of New Orleans for a rehearing counsel represented that the specific instances of illegal discrimination set forth and relied on in our original opinion as a basis of our denial to the City of the injunctive relief sought could be proved, upon the cause being remanded to the court below, by the introduction of available evidence to be in fact instances of legal and nonconforming uses of ancient vintage, long ante-dating the invoked municipal zoning and Vieux Carre ordinances. Upon this representation we granted a rehearing.
When this matter was reargued before us counsel frankly admitted the uncertainty of the alleged available evidence to disprove these specific instances of illegal discrimination. However, a reexamination of the record fully convinces us of the correctness of our original decree for we find ample evidence of the existence of these specified instances of illegal discrimination.
Counsel for the City erroneously assumed that the acts of unjust and illegal discriminations specifically referred to in our original opinion was considered by us as a denial to Levy of an equal protection of the law in violation of the 14th Amendment of the U. S. Constitution, and therefore contends that we have fallen in error. This assumption is clearly erroneous for though reference is made to the provisions of the 14th Amendment granting equal legal protection of the law to all persons, we did not intend nor did we actually hold that such acts of discrimination rendered the subject municipal zoning and Vieux Carre ordinance violative of said amendment and therefore unconstitutional. By our decree we simply denied the injunctive process sought by the City because of its illegal discriminatory practices in the enforcement of said ordinances.
In the instant case the City seeks a mandatory injunction to compel the defendant to remove a covering erected by him over an open space in his business establishment in alleged violation of the municipal zoning and Vieux Carre ordinances and consequently invokes the principles of equity.
We are instantly cognizant of the marked distinction which is drawn between acts of discrimination which are held to be violative of our constitutional provisions and those acts of discrimination which are held to be violative of our time-honored principles of equity, though strictly within the law.
Relative to the first instance Justice McCaleb, in concurring with the decree originally rendered, quoted at length from in the leading case of Snowden v. Hughes, 321 U.S. 1, 9, 64 S.Ct. 397, 400, 88 L.Ed. *218 497, 503, wherein the Supreme Court of the United States discussed the standard to be applied in determining whether an ordinance or statute, by its unequal administration or enforcement, contravenes constitutional rights, and, in part, said: "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. * * *"
In the instant case there is no proof that in the enforcement of the municipal zoning and Vieux Carre ordinances that the City acted with a deliberate discriminatory design, intentionally favoring one individual or class over another. It is well accepted that a discriminatory purpose is never presumed and that the enforcement of the laws by public authorities vested, as they are, with a measure of discretion will, as a rule, be upheld.
Relative to the latter instance of discriminatory acts referred to above, it is axiomatic that while a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigants who come before it as plaintiffs in such controversies. This fundamental principle is expressed in the maxim: "He who comes into a court of equity must come with clean hands." This doctrine universally affects the entire administration of equity jurisprudence as a system of remedies and remedial rights.
It is likewise fundamental that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. One who has resorted to injustice, unfairness and unrighteous dealing, which it is the purpose of courts of equity to suppress, will appeal in vain, even though in his wrongdoing he may have kept himself strictly within the law. Manifestly, under this maxim any act which would be condemned and pronounced wrongful by honest and fair-minded men must be held sufficient to make the hands of one who seeks equity unclean.
Having originally held that the City of New Orleans practiced specific instances of unfair discrimination, pursuing a course of conduct naturally calculated, if not deliberately intended, to bring about the very conditions which led it to the portals of equity, we, as a court of equity, will be closed and the said applicant held remediless.
For the reasons assigned, the former judgment of the Court is reinstated and now made final.
NOTES
[1] A mandatory injunction is, by its nature, one of the strongest weapons possessed by a court of equity and should only be issued when such relief is clearly warranted. "It is used where the injury is immediate and pressing, and irreparable, and clearly established by the proofs, and not acquiesced in by plaintiff * * *". Pomeroy "Equity Jurisprudence" 5th (ed) Sec. 1359, 1359(a).