TATE, Justice.
The plaintiff-taxpayers paid certain motor vehicle registration license fees under protest and then filed this suit to obtain refund of them. La.R.S. 47:1576. The taxpayers appeal the dismissal of their suit.
The taxpayers resist the imposition of a fee of $10.00 per vehicle, based upon issuance of “commercial” license plates to them, and insist that the correct license fee assessed against them was statutorily intended to be the $3.00 for “private” passenger vehicles, La.R.S. 47:463. They further contend that, if La.R.S. 47:475 is interpreted so as to tax their passenger vehicles for more than $3.00, the enactment is unconstitutional as applied to their vehicles as offending the provision of the 1921 constitution that “automobiles, for private use” should pay an annual license tax of $3.00. See La.Const. Art. 6, Section 22 (1921; as amended in 1940).
The appeal from the district court was directly to this court, because the case involved a contest of the constitutionality or legality of the tax. See La.Const. Art. 7, Section 10 (1921). (It should be noted that this mandatory appellate jurisdiction has been eliminated by the Constitution of 1974, see Article V, Section 5, so that in appeals taken after January 1, 1975, the effective date of the new constitution, the court of appeal will have appellate jurisdiction, as the court of general appellate jurisdiction, see Article V, Section 10.)
*80 i.
The trial court has correctly resolved the issues of this litigation. We adopt its reasons for judgment, as follows:
“ * * *

Facts

Gulf States Utilities Company (Gulf States) is a private investor-owned public utility corporation. In the operation of its business affairs, it requires and employs the use of numerous passenger automobiles which are obtained through a contract of lease with Beaumont Car Leasing Corporation (Beaumont). These vehicles are used exclusively in the business operations of Gulf States as a form of transportation for its employees.
In past years, Gulf States has applied for and received private passenger plates at a cost of $3.00 per annum for the passenger automobiles it operates. However, on August 24, 1970, Gulf States was advised by defendant that it would be required to surrender its private passenger license plates and obtain commercial plates at an annual cost of $10.00. * * *
In this suit plaintiffs seek a refund of the amounts paid under protest plus interest, and a declaratory judgment entitling them to purchase private passenger license plates for the remainder of the current year and for all future years. Plaintiffs argue that the taxing authorities relied upon by defendant (i. e., LSA-R.S. 47:451(3) and (4), 47:475, and Louisiana Constitution of 1921, Article 6, Section 22(a)) do not authorize the imposition of a $10.00 tax for commercial license plates. Alternatively, and assuming statutory authority exists for said tax, plaintiffs urge its application as being unconstitutionally broad. Finally, plaintiffs assert that the commercial license tax provisions, if valid, are being applied exclusively to Gulf States so as to constitute a deprivation of the equal protection of the laws.
Defendant, on the other hand, takes the position that the license tax on commercial vehicles sought to be imposed herein is sanctioned by statute and the Constitution.
The court takes cognizance of the extensive research given this matter by both counsel in legal memoranda, and is appreciative thereof.

Lazo

Plaintiffs’ initial argument against the commercial tax classification is that such a tax is unauthorized by the laws of this state. They aver that the body of laws comprising the Vehicle License Tax provisions, more specifically, LSA-R.S. 47:451(3) and (4), 47:463, 47:466, and 47:475, form no legal basis for the imposition of a commercial license tax on the vehicles leased by Gulf States in its business operations. This Court does not agree.
LSA-R.S. 47:451, entitled “Definitions and terms”, pertinently provides the following :
“The following words and phrases, when used in this Chapter, shall, for the purpose of this Chapter, have the meaning respectively ascribed to them in this Section, except in those instances where the context clearly discloses and indicates a different meaning.
(3) “Commercial use”, means every use of a vehicle on the highway, except its private use unrelated to any business function, or its use as a common carrier or a contract or charter carrier.
(4) “Commercial vehicle” means every vehicle used or operated upon the public highways in connection with any business function except that of a common carrier or a contract or charter carrier.”
(Emphasis added.)
It is abundantly clear from the above language that the automobiles leased by Gulf States and used for its business functions fall squarely within the definition of “commercial use”. It is also evident that these vehicles are “commercial *81 vehicles” as contemplated by the above statutory definition. The inapplicability of these definitions results only “ . . .in those instances where the context clearly discloses and indicates a different meaning.” Plaintiffs assert, and correctly so, that these definitions do not by their terms above impose a license tax on commercial vehicles.
LSA-R.S. 47:463(A)(1) is the licensing authority for private passenger vehicles. It provides:
“For each passenger carrying automobile or other motor vehicle carrying only persons and their personal effects exclusively (and not using or operating upon rails or upon permanent tracks) and operated only for private use, an annual registration license of three dollars shall be collected by the commissioner each two years in advance, commencing with the registration period beginning January 1, 1964. On vehicles purchased during the second year of the two year registration period, the license shall be three dollars.”
Plaintiffs urge the application of this provision to the vehicles in question.
The Court acknowledges the fact that the automobiles leased by Gulf States are passenger-carrying automobiles. Likewise, the vehicles carry only persons and their personal effects. However, they are not operated . . only for private use” as contemplated by the statutes comprising the vehicle registration laws. As plaintiffs candidly admit, the vehicles are used by Gulf States and its employees, presumably in the operation of its business. To hold that these vehicles are private would do violence to the basic rules of statutory interpretation expressed by our Supreme Court in Liter v. City of Baton Rouge et al, 285 La. 175, 245 So.2d 398 (1971). The Court therein stated:
“Nevertheless, the proper connotation to he placed on a word in interpreting its meaning does not depend on an isolated definition attributable to it. Rather, regard must be had to the word and to the context in which it is used.”
It must therefore be concluded from the collective body of statutes comprising the vehicle license tax laws that the subject automobiles are commercial vehicles subj ect to commercial use and not private.
LSA-R.S. 47:475 provides the following with respect to annual license fees:
“ § 475. Minimum licenses
Notwithstanding the provisions of R.S. 47:508, the minimum annual license fee for each vehicle subject to a license fee under this Chapter shall be ten dollars ($10.00), except that the minimum annual license fee shall be three ($3.00) for private passenger automobiles licensed under R.S. 47:463, for motorcycles licensed under R.S. 47:465, and for animal drawn vehicles licensed under R. S. 47:470.”
It is clear that the purpose of the above statute is to set a minimum annual license fee on all vehicles enumerated in Chapter 4 of Title 47 which would apply only in the event that a fee has not been otherwise fixed therein. It would logically follow, there having been no fee expressly designated for the “commercial vehicles” leased by Gulf States, that they would be subject to the $10.00 minimum imposed by LSA-R.S. 47:475. As previously determined, the subject vehicles do not fall within the exceptions enumerated in the above statute to which the $3.00 applies.
This Court is bound by the long established principle that statutes in pari ma-teria must be considered together for the purpose of interpreting and construing them. La.C.C. Article 17. In considering the body of law,s comprising Chapter 4 of Title 47 of the Revised Statutes, particularly those cited hereinabove, this Court has no alternative but to conclude that a $10.00 license tax for the commercial vehicles used by Gulf States in its business operations is therein authorized.
*82 It having been determined- that the tax sought to be imposed is authorized by law, plaintiffs alternatively challenge the constitutionality of this authority. It is their contention that the Legislature exceeded its constitutional mandate when it incorporated concepts of “commercial vehicle” and “commercial use” in the taxing statute.
The Louisiana Constitution of 1921, Article VI, Section 22(a), as amended, authorizes the Legislature to impose license taxes on all vehicles using a public highway. It pertinently provides:
“Section 22. Sources of revenue. The General Highway Fund shall be derived from the following sources:
“(a) Graded license tax. The Legislature shall impose an annual graded license tax upon all motor vehicles used on the public highways of this State, as follows :
“On automobiles for private use, an annual license tax of Three ($3.00) Dollars; on all other motor vehicles, an annual license tax based upon horsepower, carrying capacity or weight, any or all.
“The Legislature is authorized to impose an annual graded license tax, based upon horsepower or carrying capacity, either or both, on all passenger motor vehicles used exclusively in the transportation of teachers or pupils to or from schools under contract therefor made by authorities thereof.
“On all other vehicles using the public roads, the Legislature is authorized to impose an annual graded license tax, based upon carrying capacity and tonnage, either or both.”
Plaintiffs argue that the above classifications are exclusive and any attempt by the Legislature to adopt classifications of “commercial value” and “commercial use” not specifically enumerated in Article 6, Section 22 would be to exceed the authority therein granted, and thus, be unconstitutional.
Plaintiffs’ challenge to the classification of “commercial use”, although being res nova in this state, is not without parallel. In Saia Motor Freight Lines, Inc. v. Agerton, 275 So.2d 393 (1973), plaintiff therein challenged the constitutionality of the legislative classification of “domicile” for purposes of vehicle license tax registration. In rejecting its challenge, the Court stated:
“The final Saia challenge rests upon the contention that the legislature exceeded its constitutional mandate when it incorporated concepts of domicile in the taxing statute. The provision in question, Art. 6, Section 22 of the Constitution of 1921, provides in part:

“Except for subsection (a), this statute is permissive. No limitation or classification is imposed. As this Court held in State v. Arthur Duvic’s Sons, 185 La. 647, 170, So. 23 (1936):
“ . . . [Tjhe legislative power of taxation is unlimited, except where the Constitution expressly limits its exercise.” (Italics ours.)
“We hold, as did the district court, that the statute is constitutional.”
The broad and almost unrestricted power of the Legislature to enact state laws, particularly in the area of taxation, is well established in our jurisprudence. In State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430 (1908) the Court stated:
“We will observe that, differently from Congress, which possesses only such powers as are delegated to it by the Constitution of the United States, the Legislature exercises the entire legislative power of the state, except in so far as some limitation has been imposed by the state Constitution, and that, therefore, for successfully assailing the constitutionality of any statute, it is necessary to point out some particular provision of the Constitution which has taken away from the Legislature the power to pass it. We will observe, further, that every *83 doubt must be resolved in favor of the statute. . . .”
This Court is of the opinion that the above authorities are controlling and the classifications of “commercial use” and “commercial vehicle” are constitutionally valid.
Plaintiffs’ final challenge to the tax sought to be imposed herein rests upon the premise that the manner in which said tax was applied almost exclusively to Gulf States constitutes a deprivation of the equal protection of state laws guaranteed by Article 1, Section 2 of the Louisiana Constitution, as well as the 14th Amendment to the United States Constitution.
The constitutional principles governing the application of the doctrine of equal protection were aptly set forth in Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113 (1950). The Court, quoting Corpus Juris Secundum, stated:
“While the guaranty of equal protection of the laws applied to the exercise of the state’s power of taxation, and affects both persons and things, it does not deprive the states of the power to adjust their systems of taxation in all proper and reasonable ways in accordance with their own ideas of public policy; nor does it require absolute equality, the requirement being satisfied if the evident intent and general operation of the tax legislation is to adjust the burden with a fair and reasonable degree of equality. Accordingly, the constitution does not prohibit reasonable classification for purposes of taxation so long as the cías-. sification rests on a difference having a reasonable relation to the subject of the particular legislation so that all persons similarly circumstanced shall be treated alike, as determined from the practical operation of the statute. * * *
“To be unconstitutional, the classification -must be manifestly arbitrary and unreasonable, and not possibly so. Since taxation is so large a question of policy, the legislature possesses the largest measure of discretion in these matters; and the courts will not declare a tax statute void as a violation of the equal protection guaranty so long as the classification or selection made by it is based on a reason, even though in their opinion the reason is a poor one and the statute itself is unjust, the test being good faith, not wisdom.”
The court further noted:
“It is an elementary rule of construction in constitutional law that all statutory enactments are presumed to be constitutional. Whilst this presumption is not conclusive it nevertheless attaches until it is overcome by the one who challenges the validity of the statute on constitutional grounds.”
The classifications imposed by the Legislature herein are not arbitrary or unreasonable. To the contrary, the distinction between commercial and private passenger vehicles unrelated to any business function is just, logical, and reasonable. Normally, an automobile in private use, unrelated to any business function, is not likely to travel as far or as frequently or carry as heavy a load as a commercial vehicle used in connection with a business function. In addition, one who uses the public highway as an integral part of his commercial business on such a frequent basis should be more severely assessed than the private individual whose use is more restricted and shared in common with all others in the same classification.
Plaintiffs’ averment of denial of equal protection of the laws through unequal administration is also without merit. In making their arguments, plaintiffs cite Simmons v. City of Shreveport, 221 La. 902, 60 So.2d 867 (1952) for the proposition that “ . . . though a law be fair on the face and impartial in appearance yet if it is applied and administered so as practically to make unjust and illegal dis-criminations between persons in similar circumstances, material to their rights, denial of equal justice obtains within the prohibition of the constitution.” Although *84 this Court agrees with that principle of law, the facts in Simmons are distinguishable from those in the case at bar, and, therefore, have no application.
In City of New Orleans v. Levy, 233 La. 844, 98 So.2d 210 (1957), the Supreme Court, though confronted with an injunc-tive proceeding based upon illegal discrimination, discussed the doctrine of unequal application of the laws. In his concurring opinion, Justice McCaleb noted:
“The sum and substance of appellant’s charges is that his constitutional rights have been violated since many other similar or more severe violations of the city ordinances exist and that the city officials have permitted such violations by not taking any action to enforce the law. These complaints, even if established, would not be sufficient in my opinion to constitute an unconstitutional denial of equal protection to appellant as it is the well-settled rule of the Supreme Court of the United States and of all other State courts of last resort that the constitutional prohibition embodied in the equal protection clause applies only to discriminations which are shown to be of an intentional, purposeful or systematic nature.”
(Emphasis added.)
Quoting from State v. Anderson, 206 La. 986, 20 So.2d 288 (1944) the Court continued:
“The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intention or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person ... or it may only be shown by extrinsic evi- . dence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself .... But a discriminatory purpose is not presumed, there must he a showing of ‘clear and intentional discrimination’.”
(Emphasis added)
Tested in light of the foregoing rule, it is clear that plaintiffs have not been denied equal protection of the laws through unequal administration. Testimony elicited from Dick Taylor, of the Motor Vehicle Division of the Louisiana Department of Public Safety, reveals that the imposition of the commercial tax was initiated in 1970. At that time, it was intended that the tax be imposed on all commercial vehicles used exclusively to further business pursuits. The only factor precluding defendant from administering this tax as intended was the filing of this lawsuit. * * * ft

II.

In an unusually persuasive argument in this court, the taxpayers argue that the trial court fell into error in its conclusions.

Statutory Intent

Construing the statute as a whole, the taxpayers say, there was no intent to tax as a class “commercial” vehicles used to transport passengers, other than those as designated by La.R.S. 47:466. Cf. also 47:467. By the statutory classification, these are vehicles “used primarily for the transportation of passengers, bus or passenger coach”, 47:466, cf. 47:467. The statutory intent of the original enactments upon which these provisions are based was to provide a license rate for “for hire” passenger cars. See Act 320 of 1942, Section 25(h); Act 374 of 1946, Section 2 (Section 25(h)). Cf., Act 92 of 1944. The taxpayers then point out that none of the various classifications of vehicles for license taxation purposes includes the “commercial passenger vehicle (not for hire)” classification derived by the trial court from the definitions section of the enactment.
The taxpayers further suggest: The term “private” ordinarily connotes a meaning distinguishable from “public”, cf. *85 Black’s Law Dictionary, verbo “private”, p. 1358 (4th ed. 1951), rather than from “commercial”. Further, in the event of ambiguity, tax statutes should be construed in favor of the taxpayer and against the state. Brown v. LaNasa, 244 La. 314, 152 So.2d 33 (1963). Also, since the statute is at least ambiguous in this respect, the administrative construction given the provision by the administrative agency charged with enforcing it should be persuasive. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958).
Despite the forcefulness of these arguments, we agree with the district court that, construed as a whole, the vehicle registration license tax statute, La.R.S. 47:451 et seq., contemplates a distinction in classification between passenger vehicles “operated only for private use”, La.R.S. 47:463, subd. A(l), and those in “commercial use”, the latter being “every use of a vehicle on the highway, except its private use unrelated to any business function”, La.R.S. 47:451(3) and (4). (The tax for the former is specified at three dollars, Section 47:463, subd. A, whereas for the latter— not being subject to any other specific provision- — -the license fee is ten dollars, Section 47:475.)
The statutory provisions pertaining to the “commerical” vehicles were first adopted by the general revision of the vehicle registration license tax statute by Act 320 of 1942, see Section l(s) and (kk). By this 1942 revision, the predecessor of La. R.S. 47:475 was first enacted, providing for a minimum annual license fee of ten dollars for all vehicles subject to a license fee, with specified exceptions. Act 320 of 1942, Section 25 (o).
Prior to the 1942 revision, the statutory approach had been to provide a minimum license fee for each class of vehicles. See, e. g.: Act 191 of 1940, Section 25(u); Act 285 of 1938, Section 25(n); Act 20 of 1932, Section 25 (n). The original intent so reflected may have been to set a minimum for vehicles already classified and taxed by their sections.
However, the 1942 revision changed the minimum tax so as to provide a minimum tax of ten dollars for all vehicles subject to registration for use on the highways, with specified exceptions. By this 1942 revision, the legislature for the first time also distinguished between private use in the sense of non-business use (rather than non-public), as contrasted with commercial (or business) use. The district court did not err, in our opinion, in construing the statute as a whole as providing a classification for commercial vehicles different from that for passenger vehicles used solely for non-business purposes (i. e., “only for private use”).
In summary, in the absence of clearly contrary intent reflected by the prior legislative and jurisprudential history of the vehicle license tax enactment, the district court’s construction of the enactment as a whole, as it presently exists, seems to us more reasonable than that suggested by the taxpayers. The latter would force us to ignore the present statutory distinction between “commerical use” and “private use”, and assign a meaning to “private use” of passenger vehicles not ascertainable from the present text of the statute. This, we are not willing to do.

Constitutional Intent

Article 6, Section 22, as originally adopted in 1921, had distinguished between “automobiles for private use” and “trucks or automobiles used for the transportation of passengers or freight, or for the delivery or carrying of goods or merchandise.” The latter was taxed at a higher rate than the former. In finding the classification reasonable, this court noted, as one reason, that “ * * * one who uses the public highway as a part of the equipment used in his commercial business ought to pay more for such use than for the use which he enjoys in common with all others on the public highways.” Matthews v. Conway, 179 La. 875, 155 So. 255, 257 (1934).
*86 Thus, in providing (by the 1940 amendment of the Section) a low tax for “automobiles for private use”, we do not, in the light of the jurisprudential background of the provision, find any warrant for holding an intent was to limit the taxation of passenger automobiles to three dollars, whether maintained for private non-business use or instead for commercial use. The more probable intent was to provide for limited taxation of passenger automobiles maintained for “private use” in the sense of non-business use.

Decree

For the reasons assigned, we affirm the dismissal of this action, at the cost of the plainti f f s-appellants.
Affirmed.
DIXON, J., dissents with reasons.
SUMMERS, J., dissents and assigns reasons.