**UNITED STATES of America, Plaintiff,**

v.

**William Alexander LEWIS, a/k/a My Lord Prophet William A. Lewis, a/k/a Prophet David Israel; William Lenard Lewis, a/k/a Judah Israel; Muriel S. King, a/k/a Prophetess Leah Israel; Robert A. McGee, a/k/a Ezekiel Israel; Larry E. Branson, a/k/a Jabez Israel; Theodore R. Jones, Sr., a/k/a Jacob Israel; and Eddie L. Green, Jr., a/k/a Samson Israel, Defendants.**

**No. G85–133 CR.**

United States District Court, W.D. Michigan, S.D.

Nov. 26, 1986.

John A. Smietanka, U.S. Atty., Daniel L. Bell II, Susan J. King, Crim. Section—Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Larry C. Willey, Grand Rapids, Mich., for William Alexander Lewis.

Dennis Kolenda, Grand Rapids, Mich., for William Lenard Lewis.

Michael B. Quinn, Grand Rapids, Mich., for Muriel S. King.

Leroy Kramer, Grand Rapids, Mich., for Robert A. McGee.

Charles S. Rominger, Jr., Grand Rapids, Mich., for Larry E. Branson.

Anthony J. Valentine, Grand Rapids, Mich., for Theodore R. Jones, Sr.

Robert Mirque, Grand Rapids, Mich., for Eddie L. Green.

## OPINION DENYING DEFENDANTS' RENEWED MOTIONS TO DISMISS FOR VAGUENESS AND RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

HILLMAN, Chief Judge.

On September 23, 1986 defendants renewed their motion to dismiss for vagueness originally filed on September 2, 1986. On October 8, defendants renewed their Federal Rule of Criminal Procedure 29(c) motion for judgment of acquittal. In October, the government filed responses. For the reasons discussed below, both motions are denied.

Defendants' motions are grounded on a two-pronged vagueness argument. Citing *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), and *United States v. O'Dell*, 462 F.2d 224 (6th Cir. 1972), defendants first argue that the court failed to find the level of intent required to convict an individual of conspiracy pursuant to 18 U.S.C. § 241.[1] According to the defendants, the court, although required to determine whether they acted with the specific intent to violate the Thirteenth Amendment and 18 U.S.C. § 1584, applied a traditional "knowingly" standard. Second, defendants argue that had the court applied the proper intent standard it would have had no choice but to dismiss or acquit, since the legal definition of slavery does not encompass the facts of this case, thus making it impossible to prove that the defendants acted with the specific intent to

---

**1.** The statute at issue in *Screws* was actually the predecessor of 18 U.S.C. § 242, not 18 U.S.C. § 241. However, the Supreme Court subsequently has applied *Screws* to prosecutions under Section 241. *See United States v. Guest,* 383 U.S. 745, 753–54, 86 S.Ct. 1170, 1175, 16 L.Ed.2d 239 (1966); and *Anderson v. United States,* 417 U.S. 211, 223, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

violate the federal law prohibiting slavery. It is this key premise—that the federal law of slavery does not encompass the facts of this case—that I shall examine first.

### I.

Defendants argue that the prosecution of this case was a "governmental experiment as to what is and what is not slavery." (*Transcript, Oral Argument on Rule 29 Motion,* September 4, 1986 at 60.) I agree with defendants that a criminal case is not the place for experimentation. Likewise if the "law is vague or highly debatable, a defendant ... lacks the requisite intent to violate it." (*Defendants' Renewed Motion for Judgment of Acquittal,* October 8, 1986 at 3, citing *United States v. Critzer,* 498 F.2d 1160, 1162 (4th Cir.1974).) I disagree, however, with their argument that the law of slavery is "far from clear" as applied to the case presently before the court.

Relying on *Screws,* defendants argue that certain important facets of the instant case—render it a constitutionally inappropriate case for the application of the law of the Thirteenth Amendment, 18 U.S.C. § 1584, and 18 U.S.C. § 241. For example, they point out the victims were for most of the period of the conspiracy living with at least one parent in trailers located on the House of Judah camp grounds; that the labor they performed was similar to that typically performed by farm children, and that some adults were banished from the camp and others left of their own volition to return at a later date. Conceding these facts to be true, I nevertheless am satisfied that the law prohibiting slavery as embodied in the Thirteenth Amendment, Section 1584, and cases applying those provisions is "clearly delineated" and "plainly applicable" to the conduct of defendants in this case. The Supreme Court has long recognized that the words involuntary servitude have a larger meaning that classic slavery.

> The plain intention of section 1584 was to abolish slavery of whatever name and form and all its badges and incidents; to render impossible any state of bondage; to make labor free, by prohibiting that control by which the personal services of one man is disposed of or coerced for another's benefit which is the essence of involuntary servitude.

*Bailey v. Alabama,* 219 U.S. 219, 241, 31 S.Ct. 145, 151, 55 L.Ed. 191 (1911) (quoting the *Slaughter House Cases,* 16 Wall. 36, 69, 21 L.Ed. 394 (1872)). It is true that when the Thirteenth Amendment was enacted its objective was the eradication of the blatant methods of subjugation practiced in the antebellum South. The drafters were no more thinking of migrant workers, immigrant household help, patients in mental institutions, or juveniles in youth centers, than children such as those who were members of the boys' work detail of the House of Judah. Yet, the federal courts have extended the protection of the Thirteenth Amendment and Section 1584 to all of the former. *See, e.g., United States v. Warren,* 772 F.2d 827 (11th Cir.1985), *cert. denied, Moore v. United States,* —— U.S. ——, 106 S.Ct. 1214, 89 L.Ed.2d 326 (1986); *United States v. Mussry,* 726 F.2d 1448 (9th Cir.1984), *cert. denied, sub nom. Singman v. United States* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *Downs v. Dept. of Public Welfare,* 368 F.Supp. 454 (E.D.Pa.1973); and *King v. Carey,* 405 F.Supp. 41 (W.D.N.Y.1975). In each case the question on which conviction hinged was whether the defendant knowingly and willfully through improper acts exercised control over another so as to completely subjugate the will of the other person in order, at least in part, to obtain his or her labor.

In the case before me, it is uncontroverted that the defendants frequently and severely beat the named children, as well as the children's parents, their school teacher, and other adult members of the congregation all in the presence of the children. They also forced the children to view the chastisement wounds sustained by the adults as a result of these beatings, removed them from the public school system, and required camp members to sign in and out of the camp and travel in pairs when

they left camp property. Finally, the three defendants in charge of the boys' work detail carried firearms. I cannot conclude that the law of slavery is vague as applied to these facts. It is true, as I recognized in the *Opinion and Verdict,* 644 F.Supp. 1391, that no case exists in the books identical to the one before me. Yet in essence this case is no different than many other slavery cases. The methods employed by the defendants to obtain the labor of the boys are analogous if not identical to the methods of subjugation practiced by others who have been convicted of slavery. *See, e.g., United States v. Warren,* 772 F.2d 827 (11th Cir.1985); *United States v. Mussry,* 726 F.2d 1448 (9th Cir.1984); *United States v. Harris,* 701 F.2d 1095 (4th Cir.1983), *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983); *United States v. Booker,* 655 F.2d 562 (4th Cir.1981); *United States v. Bibbs,* 564 F.2d 1165 (5th Cir. 1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978); *Pierce v. United States,* 146 F.2d 84 (5th Cir.1944); *United States v. Ingalls,* 73 F.Supp. 76 (S.D.Cal.1947). Defendants' acts, no less than the acts described in earlier cases, were intended to achieve the complete subjugation of the wills of others in order, in part, to benefit from their services.

Yet defendants, on the basis of *Screws* and *O'Dell,* persist in arguing that the match between precedent and the instant case is not close enough. As far as I can ascertain, this argument is based on the assumption that the Thirteenth Amendment guarantee against slavery "is like" the Fifth and Fourteenth Amendments' guarantee of due process. (*See Memorandum in Support of Defendants' Third Motion to Dismiss,* September 2, 1986 at 5.) I disagree. The words "due process" have little inherent meaning. The Supreme Court has characterized them as "spacious," *Duncan v. Louisiana,* 391 U.S. 145, 148, 88 S.Ct. 1444, 1446, 20 L.Ed.2d 491 (1968), and the "least frozen concept of our law." *Griffin v. Illinois,* 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed.2d 891 (1956) (Frankfurter J. concurring). The *Screws* court itself acknowledged that the Supreme

Court's decisions interpreting the due process clause were close and depended on the prevailing view of the Justices as each due process case arose. *Screws, supra* 325 U.S. at 97, 65 S.Ct. at 1033. The Supreme Court has reiterated the Fourteenth Amendment rights to be among the most amorphous guaranteed by the Constitution. The only other rights that the *Screws* court suggests suffer from a lack of specificity similar to those embodied in the due process clause are the rights contained in the privileges and immunities and the equal protection clauses.

I do not believe that the Thirteenth Amendment suffers from the same amorphousness. Unlike the words "due process" or "equal protection," "slavery" and "involuntary servitude," the express terms of both the Thirteenth Amendment and Section 1584, possess an inherent meaning that can be ascertained without judicial guidance. Thus, the near-to-exact match between precedent and a new case required to ensure that potential defendants under Section 241 have notice that they are violating the due process rights of another is not necessary in order to provide those same potential defendants with notice that they are violating the right of another to be free from slavery. I do not believe that the facts cited by defendants distinguish this case so as to render the federal court decisions interpreting and applying the Thirteenth Amendment and Section 1584 inapplicable to it or inappropriately applied under Section 241.

■ My conviction that the federal right to be free from involuntary servitude is definite enough to be applied to the facts of this case without violating defendants' due process right to notice of the crime they are committing and to make possible the specific intent required for a conviction under Section 241, is strengthened by the recent Sixth Circuit case, *United States v. Ebens,* 800 F.2d 1422 (6th Cir.1986). Although not directly on point, the case provides some insight as to what the Court of Appeals believes the "specificity" mandate of *Screws* requires.

In *Ebens*, the defendant, relying on *Screws* and its progeny, argued that the government had not proved by a preponderance of the evidence that he possessed the specific intent to deprive his victim of a federal right made definite by decisions or other rule of law. Conceding that the defendants' reading of *Screws* was correct, the Sixth Circuit reasoned that a similar concern with specificity was not involved in 18 U.S.C. § 245, the statute under which defendant Ebens was convicted. According to the Sixth Circuit, Section 245 does not suffer from the lack of specificity characterizing Sections 242 or 241. *Ebens, supra* at 1429. This is so, according to the court because the plain statutory language of Section 245 guarantees "the right to be free from intimidation or interference in the enjoyment of public facilities." In the *Lewis* case, the Section 241 charge incorporates a federal right that, like the right embodied in Section 245, is described in the plain statutory language of Section 1584. Like the right to be free from interference with the enjoyment of public facilities, the right to be free from involuntary servitude and slavery has a degree of inherent specificity that is lacking in a Section 241 claim charging interference with the right to due process of law.

Finally, I would note here that I am not convinced by defendants' assertion that "[t]he inherent vagueness of the slavery statute has been recognized ... by the Sixth Circuit in *United States v. O'Dell.*" (*Defendants' Renewed Motion for Judgment of Acquittal*, October 8, 1986 at 3.) *O'Dell* does not involve a slavery statute. It is a Section 241 and Section 242 case in which the Court of Appeals overturned a jury verdict convicting state police officers of conspiring to deprive individuals of the due process of law on the grounds that the right at issue had yet to be guaranteed under the Federal Constitution. *O'Dell, supra* at 230. Specifically, the Court of Appeals ruled that the convicting district court erred in instructing the jury that a willful violation of the Tennessee laws of criminal procedure amounted to a deprivation of constitutionally guaranteed rights.

*Id.* at 228. Citing *Screws*, the Sixth Circuit stated that while the right to bail and the right to be taken before a magistrate promptly after arrest by state authorities were guaranteed by the state of Tennessee, they were not rights that had yet been determined to be part of the Fourteenth Amendment right to due process of law. The *O'Dell* court did not reverse the district court because the jury had applied federal case law interpreting the due process clause to inappropriate facts, as defendants seem to believe this court has done in applying the federal case law interpreting the Thirteenth Amendment to the facts here. Rather, the Sixth Circuit overturned the case because the judge either misapprehended Sections 241 and 242 to include state rights or mistakenly thought that Fourteenth Amendment due process rights incorporated state due process rights. The case does not provide persuasive support for the defendants' argument.

## II.

Defendants' two-pronged vagueness argument revolves around the intent standard applied in this case. Defendants argue first that it is theoretically impossible, on the basis of the facts presented, to find the section 241 specific intent mandated by *Screws*, and second, that this court in any event failed to even attempt to apply the requisite specific intent requirement.

Defendants argue that the *Opinion and Verdict's* "unique application of the slavery statutes" evidences the impossibility of finding that the defendants acted with the specific intent to deprive the named victims of their constitutional rights to be free from slavery. (*Defendants' Renewed Motion for Judgment of Acquittal*, October 8, 1986 at 2.) According to this logic, if, as the defendants assert, the right to be free from slavery has not been delineated so that it can be applied to these facts it would have been impossible for defendants to have undertaken the acts with the specific intent to deprive the children of that right. In other words, if a right is not

recognized and therefore does not legally exist, then no one can possess the specific intent to violate it. However, as is evident in the first half of this opinion, I do not agree with the premise of this argument. I do not believe that the law of slavery is vague or indefinite as applied to these facts. Thus, I cannot accept defendants' argument that it is theoretically impossible, on the basis of facts like these, to find that an individual acted with the requisite specific intent to deprive the children of their Thirteenth Amendment rights.

As regards the defendants' argument that the court did not apply the specific intent standard described by *Screws*, that is I applied too low a standard, I believe that the defendants, in all good faith, misconstrued the standard that I applied and described in the *Opinion and Verdict*. I agree with defendants that the government was required to prove beyond a reasonable doubt that defendants specifically intended to violate the federal law prohibiting slavery. I also believe, for the reasons stated in the *Opinion and Verdict*, that the government met this burden.

Defendants assert that the court applied the traditional "knowingly" standard of intent: "Basically, if the defendants knew that they were chastising minors for not working and intended to chastise them for not working, the intent element was satisfied." (*Renewed Motion to Dismiss for Vagueness*, September 23, 1986 at 2.) This is not correct. The intent standard to which I held the government in proving the Section 241 and the Section 1584 charges and which, though perhaps susceptible of clearer explanation, is reflected in the *Opinion and Verdict*, is the specific intent standard prescribed in *Screws* and applied to all Section 241 claims.[2] In holding the government to this standard I first ascertained whether defendants had violated Section 1584 which provides that "whoever knowingly and willfully holds to involuntary servitude ... any other person for any term ... shall be fined ... or imprisoned." I stated that it was necessary to ask, "Was it the intent of the alleged masters, as evidenced through their improper acts, to totally subjugate the will of the victims for the purpose, at least in part, of obtaining their labor?" In other words, I sought to determine whether the evidence submitted by the government proved beyond a reasonable doubt that the defendants intended to do the very thing that the law prohibits, namely to enslave others. Put another way, I asked whether the defendants acted, at least in part, out of bad motive.

Acknowledging that it is impossible to look into another person's mind to determine whether he or she acted with this specific intent, I explained that my analysis incorporated the accepted criminal law principle that one may infer that a person intends the natural and probable consequences of acts knowingly done, that is, acts done voluntarily and intentionally, and not because of mistake, accident or other innocent error. I then applied this method of inference to the acts of the defendants. My purpose in doing so, however, was not to determine whether the acts evidenced an intent to injure the boys, a natural and probable consequence of the chastisements but which, while a crime in and of itself, was not the crime before the court. My purpose was to determine whether the acts evidenced the defendants' intent to subjugate completely the will of the boys, "to render them incapable of choosing a course other than that ordered by the Prophet and the other defendants." *Opinion and Verdict* at 1402. In other words, I sought to

---

2. See footnote 1 for an explanation of how *Screws* applies to section 241.

18 U.S.C. § 1584 only allows a conviction of a defendant who "knowingly and willfully" holds another to involuntary servitude. Thus, by its very terms, it demands the same specific intent standard as *Screws* requires in proving the substantive intent (as opposed to the intent to agree) of a Section 241 charge. In both instances the government must prove beyond a reasonable doubt that the defendants acted with the specific intent to violate the law. It may not prove simply that the defendants acted without innocent mistake and that the outcome, which is a crime, was the natural and probable consequences of defendants' acts.

determine whether they acted with the intent of enslaving the boys.

This is an appropriate method of ascertaining the specific intent necessary to a Section 241 charge under *Screws*. The *Screws* court stated that the purpose to act with the intent to do the very thing that the law prohibits (the intent standard required to ensure that potential defendants have adequate notice that they may be committing a crime) "may at times be inferred from all the circumstances attendant on the act." *Screws, supra* 325 U.S. at 106, 65 S.Ct. at 1037. In overturning the verdict of the district court because the question of intent was not submitted to the jury with the proper instructions, the *Screws* court stated:

> The [district] court charged that petitioners acted illegally if they applied more force than was necessary to make the arrest effectual or to protect themselves from the prisoner's alleged assault. But in view of our construction of the word "willfully" [that the act be done with the intent to do the very thing the law prohibits] the jury should have been further instructed that it was not sufficient that the petitioners had a generally bad purpose. To convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right, e.g. the right to be tried by a court rather than by ordeal. And in determining whether that requisite bad purpose was present the jury would be entitled to consider all the attendant circumstances—the malice of petitioners, the weapons used in the assault, its character and duration, the provocation, if any, and the like.

*Id.* at 106–07, 65 S.Ct. at 1037–38. On pages 1402 through 1404 of the *Opinion and Verdict,* I review the acts of the defendants in the context of their attendant circumstances, demonstrating how from those I found that it was, beyond a reasonable doubt, the intent of defendants to deprive the children of their Thirteenth Amendment right to be free from slavery.

■ I would note here that the *Screws* court made it clear that in determining whether a defendant in fact acted with the intent to bring about the very thing which is prohibited by federal law, a court need not determine that a defendant actually knew that it was a constitutional right that he was violating or conspiring against.

> The fact that the defendants may not have been thinking in constitutional terms is not material where their aim was not to enforce a local law but to deprive a citizen of a right and that right was protected by the Constitution.

*Screws, supra* at 106, 65 S.Ct. at 1037. In *O'Dell,* the Sixth Circuit interpreted this statement to mean that the requisite intent will be proved if defendants can be shown to have acted "in reckless disregard of constitutional prohibitions or guarantees." *O'Dell, supra* at 232 n. 10. I believe that the record of this case supports the finding that the government proved beyond a reasonable doubt that defendants acted with such reckless disregard of the named children's constitutional rights that they in fact acted with the specific intent to violate the children's Thirteenth Amendment right to be free from slavery.

Finally, since defendants specifically raised the issue in their *Renewed Motion to Dismiss for Vagueness,* I point out that in determining whether the government proved beyond a reasonable doubt that the defendants acted "willfully," with the bad purpose to disregard the law, I took account of the defendants' demonstration of their chastisement methods to local law enforcement officials. Although that fact provided some support on the side of defendants' presumed innocence, the evidence submitted by the government provided proof beyond a reasonable doubt to sustain a conviction despite it. It simply cannot be presumed that those who publicize their intent to act in a manner which violates the law lack the requisite willfulness and specific intent to violate the law as required by Sections 1584 and 241. The intents and motives of people are too complex to allow for such a presumption.

For the reasons discussed above, defendants' *Renewed Motion to Dismiss for Vagueness* and their *Renewed Motion for Judgment of Acquittal* are denied.